DAVID HUPE *vs.* MICHAEL SEIBERT, GARNISHEE OF ABRAHAM BARNES.—*December* 1846.

In 1839, *B* conveyed to *P* and *Y*, certain real and personal property, in trust, to pay his creditors, of which he retained possession, and the rents and profits of which he was to receive and enjoy, until the sale thereof by the trustees. In 1840, *B* applied for relief under the insolvent laws. He executed a deed of all his property to *M*, under that application; but omitted in his schedule of effects to take any notice of rent due him on account of a parcel of land conveyed to *P* and *Y*. In 1842, an attachment in virtue of a judgment recovered against *B*, in 1839, was laid in the hands of the appellee, at the suit of the appellant. The garnishee admitted a balance of rent due *B*, arising out of grain grown upon the lands in question, but did not state when he had rented, or when the rent became due. HELD:

1. That the proceedings of *B*, to obtain relief under the insolvent laws, were competent evidence on behalf of the garnishee; and that the schedule, and other papers relating to the application, were necessary to lay a foundation for the deed of *B* to *M*, his trustee.

Hupe *vs.* Seibert, gar. of Barnes.—1846.

2. That if the rent due from the garnishee accrued after the deed to *M*, and out of the land mentioned in the deed and schedule, it belonged to the trustee under the insolvent law.

3. But if the rent accrued to *B*, before his application for relief, in 1840, as it was not mentioned nor included in his schedule of effects, then, under the act of 1827, chap. 70, sec. 7, it was liable to be attached by the plaintiff.

4. There was no evidence in the record to show, when the rent, which was payable in grain, accrued; but its accrual was admitted to be after October 1839, and not stated, whether before or after the application in May 1840. The time when the grain was grown, was a question of fact for the jury, and the county court erred in instructing them they must find a verdict for the defendant.

APPEAL from *Washington* county court.

On the 6th August 1842, *David Hupe* sued out an attachment, by way of execution, on a judgment rendered at March term 1839, in his favor, against *Abraham Barnes*. The sheriff returned the writ attached, of the goods and chattels, rights and credits, of the said *A. B.*, in the hands of *M. S.*, &c. The garnishee appeared, and upon interrogatories tendered to him, answered as follows:

"That at the time the said attachment was laid in his hands, he had rented a portion of the *Montpelier* lands, which had been conveyed by said *Barnes and others* to trustees; and that the following portions of the crop raised on said lands, and to which the said *Barnes* was entitled, were in the hands of this garnishee, to wit: Two hundred eight and-a-half bushels of corn, worth forty cents per bushel. One hundred and seven bushels of corn, part damaged, worth thirty-one cents per bushel. Fifty bushels corn, frosted and damaged, worth twelve and-a-half cents per bushel. Twenty-two and-a-half bushels corn, worth twenty-five cents per bushel. Deduct from the above amount, for threshing and delivering, $15.75. Two hundred twenty-three and-a-half bushels oats, worth twenty-five cents per bushel. Twenty-two and-a-half bushels oats, worth twenty cents per bushel. Nine bushels oats, worth twenty cents per bushel. Deduct for delivering two hundred and twenty-three bushels oats, at —— cents per bushel, $6.69. About one hundred and eleven bushels oats, worth twenty-three cents per bushel."

31    v.4

Hupe *vs.* Seibert, gar. of Barnes.—1846.

"Balance due on Wheat, - - - - $112 54
Do.         Corn, - - - - 112 69½
            Oats, - - - - 51 01

                                        276 24½
Balance of oats, one hundred and eleven
    bushels worth, - - - - 25 53

                                        $301 77½"

The garnishee pleaded *nulla bona*, on which issue was joined.

On the trial of this case, the plaintiff to support the issue joined on his part, offered in evidence the answers of the garnishee to the interrogatories filed in the cause.

It was admitted by the defendant, that on and before the 11th day of October 1839, *Abraham Barnes* was seized in fee and in actual possession of the property and real estate mentioned in the answer of the said garnishee, and out of which the rents and profits arose, which are mentioned in said answer. It was also admitted, that on the said 11th day of October 1839, the said *Abraham Barnes and others* executed a deed of trust to trustees, comprising the said property out of which the increment aforesaid arose, subsequent to the date of said deed. The *habendum* of that deed was as follows:

"To have and to hold the said real estate, and all the said personal estate, to the said *William Price* and *David G. Yost*, their, &c., in trust, for the following uses, &c., that is to say, as to the following real property, part of the real property above described and conveyed, that is to say, as to the said tract or farm called '*Kaywood*,' and the said tract called '*Perseverance*,' *in trust*, to sell the same at such time, and upon such terms and conditions, and either entire, or in such parts or parcels, and for such sums, as to them may seem meet and expedient; and as to the residue of the said real estate, to sell and dispose of the same, or of so much and such parts thereof, as may be necessary for the fulfilment of all the trusts and purposes of this deed, at such time or times, at any time after the first day of May next, as they may deem expedient, at public

or private sale, for cash or on credit, and upon such terms and conditions, as to them may seem right and expedient; provided, nevertheless, that until such sales made, the said *Abraham Barnes*, and the other grantors, either by themselves or their tenants, may severally be allowed and permitted, to use, occupy, and have full power and control over the same, and *receive the rents, issues and profits of the same*, but without any right or power to alien or incumber the same; and provided, also, that any crops which may be growing on the same, or any part thereof, at the time or times of the sale of the same, or any part thereof, *the said grantors* shall have full right, power, and authority, to gather and secure the same, with the right of ingress, egress and regress, for that purpose. And as touching the said personal property, other than the said slaves, in trust, as follows, that is to say, to permit the same to remain and continue in the possession, and under the power and control, of the said grantors respectively, as now held and possessed by them, until the same shall be sold by the said parties of the second part, &c., &c., it being the understanding of the parties, and the true intent and meaning of these presents, that the said slaves are to be made available only as auxiliary assets, to make good any deficiency of the other estates hereby conveyed, after the ascertainment of an actual deficit, if any, after the application of the said other property, real and personal, and not before or otherwise. And the said trustees shall apply all proceeds and avails coming into their hands, in the execution of the said trust.

1st. To the payment of necessary and proper expenses, to be by them incurred in the discharge of the trust hereby reposed in them.

2nd. To the payment of their commission of five per cent. upon all proceeds of real and personal estate, arising in the execution of this trust.

3rd. To apply the proceeds of the said real estate to the payment of the debts of the said grantors, without any priority or preference, except as the same exists by law, and to apply the proceeds of the personal property in like manner, without priority or preference, except as the same exists by law.

4th. In case of advances made by the said trustees *to* meet any pressing demands, they are to stand in respect of such advances, by substitution, in the stead of the persons so paid, and to receive payment, with interest, in the same manner as the persons so paid would have been entitled, if their debts had still remained unpaid.

5th. The said trustees shall not be liable for any loss or deterioration of property, real or personal, without actual and wilful default on their part, and neither shall be liable for the default or misconduct of the other.

6th. The surplus of real and personal property, and of bonds, notes, money or other assets, which shall remain after payment of the said debts, shall be reconveyed, handed over, paid and delivered, by the said trustees to the grantors, according to their several rights and titles to the same."

The defendant then offered in evidence the application of the said *Barnes* for the benefit of the insolvent laws of the State of *Maryland,* dated the 12th day of May 1840, and the deed of all his property to *J. T. Mason;* and also the schedule filed in said application, which schedule is as follows:

A list of the creditors, debtors, and property of *Abraham Barnes,* an applicant for the benefit of the insolvent laws of *Maryland:*   One-seventh of one thousand acres of land in *Western Virginia;* one-seventh of ten or twelve lots in *Washington* city; and the reversionary interest in a deed of trust, executed to *Wm. Price* and *David G. Yost* on the 11th October 1839.

And also offered in evidence the other papers usual upon such applications.

It was, admitted by the defendant, that the said schedule was in the handwriting of *John T. Mason, Esq.,* a practising attorney in the Court of Appeals of *Maryland,* and in *Washington* county court, and other courts in the State of *Maryland.* Whereupon the plaintiff, by his counsel, objected to said schedule and deed, as inapplicable and irrelevant to the issue joined in this case; and on the further ground, that the property attached is not mentioned and included in said schedule, and the same therefore does not tend to prove that the property was

in any other person than the said *Barnes*. The court, (MARTIN, C. J., BUCHANAN and MARSHALL, A. J.,) overruled the objection and permitted the evidence to be read to the jury. The plaintiff excepted.

The plaintiff, by his counsel, then prayed the court to instruct the jury, that the present usufructuary interest of the said *Barnes,* reserved to him in the said deed, dated the 11th day of October 1839, is not mentioned and included in said schedule, which instruction the court refused to give.

The defendant, by his counsel, then prayed the court to instruct the jury, that if they shall find from the evidence in the cause, that the deed of trust offered in evidence, was executed by the said *Abraham Barnes and others,* to *Wm. Price* and *David G. Yost,* on the 11th day of October 1839, for certain real estate situate in *Washington* county; and that on the 12th day of May 1840, he, the said *Barnes,* applied for the benefit of the insolvent laws of *Maryland,* and on the said last mentioned day, executed the deed of trust also offered in evidence to his insolvent trustee; and that at the time of said application, he returned the schedule of his property, which is also offered in evidence, then all the interest and estate which the said *Barnes* reserved, by and under said deed of trust, was mentioned and included in said schedule within, to the true intent and meaning of the act of Assembly in such case made and provided; that said interest is not subject to the attachment issued in this case, and that their verdict must be for the defendant, which said instruction the court gave; to which said decisions of the court respectively :

1st. In admitting the said testimony excepted to, as aforesaid.

2nd. In refusing the said instructions to the jury prayed for by the plaintiff, as aforesaid; and

3rd. In granting the prayer of the defendant, and giving the instructions given as aforesaid.

The plaintiff excepted.

The verdict being against the plaintiff, he prosecuted this appeal.

The cause was argued before ARCHER, C. J., DORSEY, SPENCE, MAGRUDER and MARTIN, J.

By JERVIS SPENCER for the appellant, and
By W. PRICE for the appellee.

SPENCE, J., delivered the opinion of this court.

*Abraham Barnes* made his application for the benefit of the insolvent laws of *Maryland* on the 12th day of May 1840, to *Thomas Keller,* a justice of the orphans court of *Washington* county, by whom *John T. Mason* was appointed trustee, for the benefit of the creditors of the said *Abraham Barnes.* The record shews, that the trustee gave bond, and the petitioner executed a deed to him, for all his estate, real, personal and mixed, for the benefit of his creditors, on the 12th day of May 1840; and at the same time gave a schedule of his property as follows: "one-seventh of one thousand acres of land in *Western Virginia;* one-seventh of ten or twelve lots in *Washington* city; and the reversionary interest in a deed of trust, executed to *William Price* and *David G. Yost,* on the 11th of October 1839."

The attachment in this case was issued on the 6th day of August 1842; and the sheriff, in his return, certifies, "that on the 16th day of August 1842, he attached, of the goods and chattels, rights and credits, of *Abraham Barnes,* in the hands of *Michael Seibert,* the sum of money, with interest and costs, for the use of the within named *David Hupe,* use of *C. D.* and *J. Slingluff;* and that he made known to the said *Michael Seibert,*" &c. At the return of the writ of attachment, *Seibert,* the garnishee, appeared, by his attorney, to whom the plaintiff exhibited interrogatories, to which *Seibert,* the garnishee, filed the following answer: "to the first interrogatory, this garnishee answers and says, that at the time the said attachment was laid in his hands, he had rented a portion of the *Montpelier* lands, which had been conveyed by said *Barnes and others* to trustees, and that the following portions of the crop, raised on said lands, and to which the said *Barnes* was entitled, were in the hands of this garnishee," a balance due for wheat, corn, and oats, of $301.77.

At the trial of this cause, the defendant, to maintain the issues on his part, offered in evidence the insolvent papers of *A. Barnes,* and among them the schedule and deed of *A. Barnes,* the petitioner, to *J. T. Mason,* his trustee. To the admissibility of which instruments the plaintiff objected, but the court overruled the objection, and the same was given to the jury, as admissible and competent evidence in the cause.

This judgment of the court raises the first question under the exceptions in this cause. It was indispensable on the part of the defendant, in order to maintain the issues on his part, to shew, that *A. Barnes* had been discharged under the insolvent laws of *Maryland;* and under the provisions of the act of 1827, chap. 70, sec. 1, it is expressly provided, that no county court, judge of a county court, or justice of an orphans court, shall grant a personal discharge under an application for the benefit of the insolvent laws of this State, until such applicant shall execute to his trustee a good and sufficient deed of conveyance for all his estate, real, personal and mixed, (except wearing apparel, &c.,) and until the trustee, so appointed, shall certify in writing to the said county court, judge or justice, as the case may be, that he is in possession of all the estate of the applicant, mentioned in his schedule.

Under this act of Assembly, the deed and schedule were admissible to shew the conveyance to his trustee. The insolvent's deed was, unquestionably, admissible evidence, and the schedule, and other insolvent papers, were necessary to lay a foundation for the introduction of the deed. The deed was evidence, whether the grain or credits attached, were named and described in the deed and schedule, or not, for by the deed all the estate, real, personal and mixed, of the petitioner, passed to the trustee, and his title was good against all the world, except a creditor under the act of 1827, chap. 70, sec. 7; and if the grain was grown, or the credit accrued, subsequent to the date of the insolvent's deed, it was the grain, or debt of the trustee, because it was the produce of his interest in the land under the deed.

The instruction asked by the plaintiff's second prayer, presented, according to the case made by the record, an irrelevant and abstract proposition.

It does not appear from the proceedings, that the attachment was laid upon any lands, or interest in land, which belonged to *Barnes*, the debtor, or that any such right or interest was attached.   The sheriff's return to the attachment is, that he had attached in the hands of *Michael Seibert* goods and chattels, rights and credits, of *A. Barnes*, the sum of money, &c.

It certainly is no easy task to determine satisfactorily from the garnishee's answer, whether he had in his hands the grain mentioned, or owed *Barnes* the sum mentioned, the proceeds of the grain; neither is it important.   It certainly was not land, or any interest in the lands, reserved to *Barnes'* under the deed of the 11th October 1839.

If this grain, or the debt due for the grain, accrued to *Barnes* before he executed the deed of the 11th of May 1840, it was not mentioned and included in his schedule, and was, therefore, under the act of 1827, chap. 70, sec. 7, liable to the attachment.   But if the grain, or any part of it, was grown on the lands in which *Barnes* reserved the usufructuary interest, subsequent to the date of said deed, then the grain, or such part of it as was made or grown, subsequent to the date of said deed, or the proceeds thereof, were not subject to the attachment.

There is no evidence in the record which shews when the grain was made or grown.   It is admitted, that the increment accrued subsequent to the deed to *Price* and *Yost*, but it is not stated, whether before or after the deed to *Mason*, the insolvent's trustee, and as this was a question which should have been left to the jury, the court erred in taking it from them, by instructing them that they must find a verdict for the defendant.

JUDGMENT REVERSED AND PROCEDENDO AWARDED.